[Civ. No. 26514.   Second Dist., Div. Three.   Sept. 18, 1963.]

EDWARD A. WINE et al., Plaintiffs and Appellants, v. LOUIS H. BOYAR et al., Defendants and Respondents.

Phill Silver for Plaintiffs and Appellants.

Harold W. Kennedy, County Counsel, Ronald L. Schneider, Deputy County Counsel, and James J. Arditto for Defendants and Respondents.

FILES, J.—This action was brought by two residents and taxpayers of Los Angeles County who sought to recover for the benefit of the county the sum of $413,653.08, which had been appropriated and expended for the construction of three bridges and the paving of certain streets in that portion of the San Fernando Valley known as the Platt Ranch. The parties defendant include the county, the owners of the Platt Ranch, and some others who were alleged to have participated in promoting the subdivision of the Platt Ranch. Since it serves no purpose in this opinion to distinguish between the various nongovernmental defendants, the term "defendants" will be understood to refer to some or all of them, except the county, collectively.

The action was tried before a court sitting without a jury. At the close of the plaintiffs' evidence the court, acting under Code of Civil Procedure, section 631.8, made findings of fact adverse to plaintiffs and dismissed the action. This appeal is from the judgment.

The expenditures in question were paid out to county employees and contractors who planned and built the bridges and paved the roads. We note and pass by defendants' contention that they cannot be held liable because they are neither the persons who authorized the expenditures nor the persons who received the money. Since we have concluded that the expenditures were not unlawful, the question of who might be liable is better left for determination in a case which actually involves illegal expenditures.

A brief chronology is helpful in understanding plaintiffs' contentions:

April 22, 1955, defendants filed with the county regional planning commission a tentative subdivision map for the Platt Ranch. The map showed 2,706 residential lots, 3 school sites, and 2 commercial zones.

June 21, 1956, defendants wrote to the board of supervisors referring to the proposed subdivision and requesting that the county construct four bridges and pave portions of Victory Boulevard, Vanowen Street, Platt Avenue and Valley Circle Drive within the area to be subdivided.

April 23, 1957, the board of supervisors approved the tentative subdivision map.

May 21 and June 25, 1957, the board of supervisors appropriated funds for the fiscal year 1957-58 to make the improvements requested.

June 25, 1957, defendants applied to the City of Los Angeles for annexation of the subject property.

September 10 and 11, 1957, and March 12, 1958, defendants deeded to the county the roads on which the improvements were to be made.

May 8, 1958, proceedings for a county subdivision terminated under Business and Professions Code, section 11555, for failure to file a final map.

June 24, 1958, additional appropriations were made by the board of supervisors for the fiscal year 1958-59.

October 22, 1958, the last of the expenditures complained of in this action were made.

October 23, 1958, this action filed.

November 6, 1958, the land was annexed to the City of Los Angeles.

The expenditures in question were made from the County Motor Vehicle Fund. During the years in question more than 75 per cent of the money in this county fund was derived from the State Highway Users Tax Fund. All parties in this action have assumed that the laws governing the use of State Highway Users Tax Fund money should control the moneys which are here involved.

Article XXVI of the California Constitution provides in section 1 and section 2 that moneys collected from state taxes on motor vehicle fuel, vehicle registration fees and other vehicle taxes shall be used exclusively for certain administrative purposes and for highway purposes, including the construction of public streets, whether in incorporated or unincorporated territory. Section 3 of article XXVI gives to the Legislature power to appropriate such moneys and to provide

the manner of their expenditure by the state, counties or cities.

The Legislature has provided in Streets and Highways Code, section 2100 et seq., for the creation of the Highway Users Tax Fund in the State Treasury, from which certain of the moneys collected from vehicle and fuel taxes are distributed to the counties. Section 2150 provides that all amounts paid to a county out of the Highway Users Tax Fund shall be paid into the county's special road improvement fund. The section further provided (as it read before the 1959 amendment): "All money received by a county from the Highway Users Tax Fund shall be expended by the county exclusively for county roads and highways and for other public street and highway purposes as provided by law." Streets and Highways Code, section 940, gives the board of supervisors general supervision, management and control of county highways. Section 941 authorizes the board of supervisors to cause those highways which are necessary to public convenience to be established, recorded, constructed and maintained.

There is nothing in the record here to indicate that in authorizing the improvement of the roads in question the board of supervisors failed to follow the proper procedure. The parties stipulated that before any money was expended the road deeds had been executed to and accepted by the county. All expenditures were made before the area was annexed to the City of Los Angeles.

Plaintiffs' principal argument is that the improvement of these four roads constituted a gift of public moneys to the defendants, as the owners of the contiguous land.

If the challenged expenditures constituted a "gift" of public funds, they would of course have been unlawful. (Cal. Const., art. IV, § 31.) On the other hand, if the expenditures were made to serve a proper public purpose, they were not a "gift" despite the fact that some private persons may have received special benefits. (*County of San Diego* v. *Hammond*, 6 Cal.2d 709, 724 [59 P.2d 478, 105 A.L.R. 1155]; *County of Los Angeles* v. *La Fuente*, 20 Cal.2d 870, 877 [129 P.2d 378].)

Plaintiffs argue that these roads were not "county-wide" roads, that they would serve only "local" traffic, and that their construction would be of little benefit to anyone except the defendants. Plaintiffs point to a number of geographical factors to support their theory. At the time the money was

spent the Platt Ranch was uninhabited. It is located at the westerly end of the San Fernando Valley. The land to the west and north is hilly. Even after the county had made the improvements in the Platt Ranch there were no roads through the hills to the west, and there was no paved outlet to the north.

Preliminarily, we observe that plaintiffs have cited no provision of the Constitution or the statutes forbidding the board of supervisors to improve "local traffic" roads, as distinguished from "county-wide" roads. Plaintiffs' argument appears to be in effect that where there is no reason to expect more than purely local traffic within a subdivision, the subdivider should pay for the streets, and it would be an abuse of discretion for the board to appropriate public funds.

The trial court found "That the construction of said roads and bridges was not solely for the benefit of the owners of property contiguous to said roads and bridges, but was for general county benefit." There is substantial evidence to support that finding. The record shows that these roads were on the master plan of highways which had been adopted by the board of supervisors in 1940 and amended from time to time, the last pertinent change occurring on March 26, 1957.

The 1940 master plan showed Victory Boulevard as a major (100-foot) east-west highway through the San Fernando Valley, extending across the Platt Ranch and running into Valley Circle Drive on the west. The 1940 plan showed Vanowen Street as a secondary (80-foot) east-west highway through the valley, across the Platt Ranch, and connecting with Valley Circle Drive on the west. Platt Avenue, which runs north and south through the tract, was shown on the 1940 plan as a major highway between Burbank Boulevard (a secondary highway) on the south and Victory Boulevard. The March 1957 amendment of the master plan projected Platt Avenue to continue north beyond Victory to connect with another major highway, Sherman Way. Valley Circle Drive appeared on the 1940 master plan as a major highway from Chatsworth on the north, following the edge of the hills southwesterly, passing along the edge of the Platt Ranch, and connecting with the Ventura Freeway far to the south.

The dedication and improvement of the portions of these highways which pass through the Platt Ranch may be regarded as a step toward the completion of a countywide highway system which had been planned many years earlier. Though the Platt Ranch is at a remote corner of the county,

the highways which the county improved were those which would feed into the countywide system.

It is only necessary to mention the rapid growth of population and the constant advance of suburban home building in this county to refute any suggestion that there is no public purpose in building highways before the people occupy the land.

Underlying all of plaintiffs' arguments is their assumption that the real motive of the board of supervisors was not to serve the public but to enrich defendants by the improvement of these roads. Plaintiffs did not offer evidence as to the state of mind of the board of supervisors, but they base their argument upon what the defendants did and what the supervisors did. They emphasize the fact that defendants first applied for a county subdivision, then asked the county to pave roads and build bridges; and after the county undertook the improvement, defendants abandoned their plans for a county subdivision and obtained annexation to the City of Los Angeles.

■ The decision of the board of supervisors to expend public funds on these highways was a legislative act. (*O. T. Johnson Corp.* v. *City of Los Angeles,* 198 Cal. 308, 324 [245 P. 164] ; *Sherman* v. *Buick,* 32 Cal. 241 [91 Am. Dec. 577].) In the *Sherman* case the Supreme Court said (p. 253) : "Should the Legislature be of the opinion that the general welfare and prosperity of the people would be promoted by the construction of a system of roads which would open a pathway from every man's house or farm to the main arteries of travel and the marts of trade and commerce, there is nothing to prevent them from providing that such roads may be opened. The ultimate decision of the question, whether a given road will subserve the public need or convenience, must rest somewhere, and it is wisely left for the Legislature to determine in such manner as they may provide." ■ Since the board had the power and the duty to decide which streets were to be improved, its motive in selecting these streets is not subject to judicial review. (*Stahm* v. *Klein,* 179 Cal. App.2d 512, 518 [4 Cal.Rptr. 137].)

■ "Whether, in the exercise of legislative powers, a board acts wisely or unwisely is no concern of the courts. They cannot enter the board room and substitute their judgment for that of the board nor interfere at all with its action unless the board is exceeding its legislative powers, or its judgment or discretion is being fraudulently or corruptly

exercised." (*Nickerson* v. *County of San Bernardino,* 179 Cal. 518, at pp. 522-523 [177 P. 465]. To the same effect, see *Beals* v. *City of Los Angeles,* 23 Cal.2d 381, 386 [144 P.2d 839]; *O. T. Johnson Corp.* v. *City of Los Angeles, supra; Ransom* v. *Los Angeles City High School Dist.,* 129 Cal.App. 2d 500, 505 [277 P.2d 455]; *Clazie* v. *Kinloch,* 192 Cal.App. 2d 239, 243 [13 Cal. Rptr. 279].) As the trial court noted when it ordered judgment for defendants in the present case: "Under the authorities cited the proceedings were legal and it is not appropriate to denounce here the political pressures and procedures apparently employed in the transaction. Of these the voting public must be the final judge."

Plaintiffs' complaint alleged that at the time defendants requested the county to make the road improvements, they concealed from the board the fact that it was defendants' intention to apply to the City of Los Angeles for annexation immediately after obtaining an appropriation from the county. The complaint further alleged that after the appropriation of the funds and before the expenditures were made, the board was informed that defendants had applied for city annexation. No evidence was offered to show that the board of supervisors did not have possession of all pertinent facts when it acted. At the trial plaintiffs' counsel asserted that the board learned of the proposed annexation and went ahead with the road improvements notwithstanding.

Plaintiffs offered evidence that as early as January 1957 defendants had made statements that they intended to seek annexation. The court sustained objections to this offer on the ground of immateriality. This ruling was proper. It was stipulated that defendants formally applied for annexation on June 25, 1957, and that annexation took place November 6, 1958, after the expenditures which are complained of here. Defendants' intention at an earlier time to seek annexation makes no difference.

The fact that defendants had decided to seek annexation to the City of Los Angeles may well have been a circumstance for the board to consider in deciding whether or not to appropriate the funds, but it was not a fact which would deprive the board of power to authorize the expenditure. The distinction between paving a county highway and paving a highway that will soon become a city street is not as significant as plaintiffs assume. The money in the Motor Vehicle Fund is raised on a state-wide basis by taxing users of motor vehicles. The motorists who pay the taxes and use the streets pass freely across political boundaries. A part of the High-

way Users Tax Fund is apportioned among the counties (Sts. & Hy. Code, §§ 2104-2106) and a part is apportioned for expenditure in cities (Sts. & Hy. Code, §§ 2107, 194-205). Under certain circumstances the county may expend a portion of the money allocated to it within the limits of an incorporated city. (Sts. & Hy. Code, §§ 1623-1686.)

In *City of Oakland* v. *Garrison*, 194 Cal. 298 [228 P. 433], the court upheld the constitutionality of a statute which authorized a county to transfer its own funds to a city for street purposes, where the county supervisors had determined that the improvement of the city street was of interest to the county. The court said (at p. 304) : "In these days [1924] of almost universal use of motor vehicles for the transportation of passengers and freight, it is a matter of common knowledge that the improvement of a street within a city may well be of much more than local interest and benefit. This is particularly noticeable in those cases where such a street connects with a county boulevard or state highway."

*City of Los Angeles* v. *Riley* (1936) 6 Cal.2d 621 [59 P.2d 137], involved the constitutionality of a statute which provided that a portion of the motor vehicle taxes collected by the state be paid over to cities and counties for the regulation and control of highway traffic. In response to the contention that this statute violated California Constitution, article XI, section 12, which forbade state taxation for county or city purposes, the Supreme Court declared that the regulation of traffic on city streets was a state purpose. The statute was upheld on that ground. In *County of Los Angeles* v. *Riley*, 6 Cal.2d 625 [59 P.2d 139, 106 A.L.R. 903], the court considered the validity of another section of the same act which appropriated a portion of the vehicle tax funds to the counties without express limitation as to their use. The court said that the limitations of section 12, article XI, of the Constitution were to be read into the act, and that, so interpreted, the section appropriated money to counties for state purposes. The court added (at p. 629) : "If the county officers attempt to expend the money for local purposes, there are appropriate remedies available to restrain such action."

Following those decisions, article XXVI was added to the California Constitution on November 8, 1938. This new article authorized the use of vehicle and fuel tax funds for the construction and repair of "public streets and highways, whether in incorporated or unincorporated territory." The new article also gave the Legislature "full power to ap-

propriate such moneys and to provide the manner of their expenditure by the State, counties, cities and counties, or cities for the purposes specified. . . .''

In 1955 the Legislature adopted section 1686 of the Streets and Highways Code, which contains these words: ''The Legislature hereby finds the improvement and maintenance of all city streets is of general county interest.'' The section provides that the board of supervisors may, by a four-fifths vote of its members, determine that county aid shall be extended for the improvement of city streets.

In the light of this history, it is futile for plaintiffs to attack the legality of the expenditures here by asserting that the streets were ''local'' and served no county or state purpose.

■ At the time the county improved the roads in question they were ''county highways'' within the definition contained in Streets and Highways Code, section 25. We cannot agree with plaintiffs' argument that the expenditure is a gift in violation of section 31, article IV, of the California Constitution (or, as plaintiffs say, ''violates the spirit and intent'' of the section) by reason of the fact that these county highways were likely to become city streets soon after their improvement.

Plaintiffs contend that the county should have required the defendants to improve the streets under Business and Professions Code, section 11611, which authorizes a governing body to require a subdivider to improve the streets as a condition of approving his subdivision. Plaintiffs put in evidence a portion of county Ordinance Number 4478 pertaining to subdivisions, and a copy of two documents purportedly published by the county stating the policies of the board of supervisors in spending Highway Users Tax Funds in new subdivisions.

Ordinance 4478 specifies what street improvements a subdivider will be required to make or agree to make before his final subdivision map will be approved. The policy statements indicate that when there is a public need for improvement of major or secondary highways through a new subdivision, if the subdivider will provide plans, grading, drainage structures and curbs, the county will pay for the paving. One of the memoranda declares, ''At no time has the construction of bridges on Master Plan Highways been considered a responsibility of the subdivider.''

The trial court made no finding as to whether the county

expenditures in this case were consistent with the principles expressed in Ordinance 4478 or the policy memoranda, the court deeming this immaterial. We concur in that view. .

The county subdivision ordinance was not directly applicable because no county subdivision was ever created. Moreover, there is no reason to regard either the ordinance or the policy statements as a limitation upon the power of the board of supervisors to appropriate money to improve highways upon land which is to be subdivided at some future time. The fact that a subdivider could be compelled to pay for some improvements is simply another factor for the board to consider in reaching its decision. No evidence was offered to show that the improvements which the county paid for would have been made by the subdivider if the county had refrained from doing so.

Plaintiffs offered evidence that Platt Avenue was built over an old, private, dirt road. They point to section 941 of the Streets and Highways Code, which provides: "No public or private road shall become a county highway until and unless the board of supervisors, by appropriate resolution, has caused said road to be accepted into the county road system." Plaintiffs also cite Streets and Highways Code, section 969.5, which deals with the improvement of privately owned roads. The trial court correctly concluded that neither section is relevant here. The pretrial stipulation declares that road deeds were executed and were accepted by the county before any public funds were expended. Acceptance necessarily imports the adoption of any necessary board resolution. When the improvements were made these roads were not private roads because they had become county highways, as defined in Streets and Highways Code, setcion 25.

In summary, the evidence offered by plaintiffs is insufficient to support any finding that the board of supervisors failed to proceed in a regular manner, or that it violated any constitutional or statutory limitation upon its power, or that its action was the result of any fraud or collusion.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.