[Civ. No. 30612. First Dist., Div. Four. Jan. 26, 1973.]

JOHN C. RATHBUN, Plaintiff and Appellant, v.
CITY OF SALINAS et al., Defendants and Respondents.

## Counsel

Moreno, Branner & Carnazzo, Branner & Carnazzo, William P. Carnazzo and Donald M. Branner for Plaintiff and Appellant.

Heller, Ehrman, White & McAuliffe, Weyman I. Lundquist, Edward W. Rosston, John Roger Beers, M. Glen Vinson, Jr., and Warren J. Lynch for Defendants and Respondents.

## Opinion

**DEVINE, P. J.**—Plaintiff appeals from the judgment of dismissal which followed sustaining of a demurrer to his first amended complaint. Permission to amend was granted, but plaintiff declined and stands on his pleading. The action is a taxpayer's suit by which plaintiff seeks to have the City of Salinas and other defendants, officers of the municipality, enjoined from use of certain real property as anything other than a public parking lot, and enjoined from taking further action under a certain proposed lease. A declaratory judgment is sought which would declare the proposed lease to be illegal and void in its entirety or in certain parts. The judge of the superior court was of the opinion that none of the eight alleged causes set forth facts sufficient to constitute a cause of action.

The history and nature of the transaction are described in plaintiff's pleading. We take the allegations as true and we disregard certain defensive material which was presented to the court during the hearing on plaintiff's application for a preliminary injunction, because defendants have chosen to meet the first amended complaint only by demurrer on the ground that it does not state facts sufficient to constitute a cause of action. The denial of the preliminary injunction is not an adjudication of the ultimate rights in controversy. (*Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].)

Here, then, are the allegations: Since 1953 the City of Salinas has maintained, and has twice enlarged, a parking lot known as the Klute-Walker Lot in its prime downtown area. In 1969 defendant Wells Fargo Bank, desiring a more favorable location in Salinas than it then had, proposed a land exchange; but following meetings of representatives of the bank with a negotiating committee of the city council, the council decided upon a lease to the bank of part of the parking lot. The lease is for 50 years, but there are options for two successive renewals of 10 years each, the rentals for which are to be worked out by a described system of appraisal. But if the option be not used, at the expiration of the initial 50-year term, the

bank has the right of first refusal to lease the demised premises on the same terms as the premises are offered to other prospective tenants.

The bank shall construct a two-story banking and office building on the demised premises. The building is to belong to the city at the end of the 50-year term. The rent will be prepaid. The plan calls for construction of a building by the city, at its expense, a parking structure adjacent to the bank building. The entire amount of prepaid rent, amounting to $364,000 (plus $50,000 of the city's funds), will be used for building the parking structure. The bank will have the right to the use of the air space above the parking structure for expansion of the banking building, apparently without payment of additional rent. The city must maintain fire insurance, extended coverage, and insurance against vandalism and malicious mischief during the term of the lease, and must apply the proceeds, plus its self-insurance of deductible amounts, to restoration in case of destruction by fire or other casualty. A right of way to the bank must be maintained by the city over other lots which it owns, unless and until the land becomes dedicated as a public street. Lessee shall pay the possessory interest tax. The lessee shall not be bound unless the city grants a variance of on-site parking, diminishing the requirement by about 53 stalls. The city planning commission voted unanimously against the variance, but the city council granted it.

Appellant does not charge fraud or corruption on the part of the city's officers (he alleges that the council "has forced its well-intentioned will upon the City of Salinas, in a manner contrary to law"). ██ But it is not necessary, in order to state a cause of action for illegal expenditure or waste of the property of a city, that there be actual fraud. (Code Civ. Proc., § 526a.) In *Irwin* v. *City of Manhattan Beach,* 65 Cal.2d 13, 24 [51 Cal. Rptr. 881, 415 P.2d 769], it is said that a finding by a city council is reviewable by a court "only where it is alleged that fraud, oppression, or *manifest abuse of discretion* accompanied the determination of public benefit. . . ." (Italics supplied.)

██ It is well established that action of a city council may not be voided by a court merely because some mistake of judgment may have occurred. The courts will entertain only those taxpayer's suits that seek to measure governmental performance against a legal standard. The courts cannot formulate decrees that involve the exercise of indefinable discretion. (*Harman* v. *City and County of San Francisco,* 7 Cal.3d 150, 160-161 [10 Cal.Rptr. 880, 496 P.2d 1248].) ██ Nor will the courts invalidate a transaction which is for municipal purposes even though there is incidental private benefit. (*Saunders* v. *Carr,* 268 Cal.App.2d 10, 21 [74 Cal.Rptr. 147]; *Wine* v. *Boyar,* 220 Cal.App.2d 375, 380-381 [33 Cal.Rptr. 787]; *Irwin* v. *City of Manhattan Beach, supra,* 65 Cal.2d at p. 23.) But in measuring

the transaction against a legal standard, the court, we take it, may consider the transaction as a whole. ■ A taxpayer's suit states a cause of action when, if the allegations be true (as on demurrer they must be deemed), it fairly discloses waste of public funds or property or a manifest use of such funds or property chiefly for long-term commercial use with substantial benefit to a lessee accompanied by diminution of active present use of the property for a municipal purpose. The city council's action in such a case is ultra vires. ■ Upon examination of plaintiff's first amended complaint, we are of the opinion that it does state a cause of action. The trial court, therefore, should, after appropriate pleading by the city, hear the cause, decide whether an injunction should be granted, or possibly render declaratory judgment as to the legality of the whole or of parts of the proposed lease.

In giving our reasons for this decision, we must, because of the state of the case, that is, a judgment of dismissal following sustaining of a general demurrer, put the matter in terms which are favorable to appellant. Allegations of the complaint may prove to be unfounded and the possible benefits to the private corporation and loss of municipal services (parking) set forth in the pleading may on trial be shown to be quite different from those which we deduce from the present pleading.

These reservations having been stated, we proceed to examine the particulars of the transaction.

1) The building which is to be constructed will not serve any useful purpose for the government or functions of the city for at least 50 years. It will be a banking and office building devoted entirely to private enterprise. The case is different, therefore, from such cases as *City and County of S.F.* v. *Linares,* 16 Cal.2d 441 [106 P.2d 369], in which the subsurface space of Union Square was leased to the highest responsible bidder for the very purpose for which the lot in the present case had been used, public parking; *City of Oakland* v. *Williams,* 206 Cal. 315 [274 P. 328], in which the use of the leased property was public, the use being a warehouse at the Port of Oakland; and *Pipes* v. *Hilderbrand,* 110 Cal.App.2d 645 [243 P.2d 123], where hangars constructed by the city were leased to a corporation, the public purpose being development, maintenance and operation of the airport of the City of Fresno.

2) The real property to be leased is not abandoned land, but a lot used for some 15 years and still being used for parking in the prime downtown area of Salinas, land which had been acquired with taxpayers' funds and possibly by condemnation. A garage would be constructed on part of this property which would supply some of the parking needs, but the number of

parking stalls would be reduced and, besides this, the variance from on-site parking requirements which was exacted from the city as a condition to the bank's acceptance of the lease would reduce still more the area available for parking; but even the diminished area would be in the public garage contiguous to the bank, and presumably of considerable service to it. It is said in respondents' brief that the garage can be enlarged by an extra story, but, of course, this would have to be paid for by the city's funds.

3) Although the banking building would belong to the city at the end of 50 years, and thereafter presumably could be rented out by the city, it is not the proper function of a city to invest in banking buildings. Property which is not serviceable for city functions may be leased even for purely commercial purposes, but it is at least questionable that the city may convey a leasehold interest in property which, up to the time of the lease, is actively used for a municipal purpose.

4) The transaction has about it some of the aspects of sale. A sale under the city charter would require public bidding. This is not to say that a long-term lease actually constitutes a sale. In *City of Santa Barbara* v. *Maher*, 25 Cal.App.2d 325 [77 P.2d 306], a 99-year lease by the city to the State of California was held to be truly a lease and not a sale. But these elements have enough of the appearance of sale about them to merit judicial inquiry: (a) The prepayment of rent for the entire 50 years, so that until well into the 21st century the lessee would pay no rent. There is no escalation clause, no provision for renegotiation, and apparently no account has been taken of progressive inflation. It is stated by respondents that the prepayment somewhat exceeds the appraised value of the lot. If so, the question arises, why was there not a sale conducted under the protective measures of the charter, especially of competitive bidding? Or would sale of actively used property have been permissible under the charter? (b) The lease provides that the city must carry insurance on the building, which it does not own and will not own for 50 years. Not only this, but in case of destruction of the premises by fire or other casualty, the city must make available to the lessee the entire proceeds of the insurance policies, and also, from city funds, such amounts as the city provides as self-insurer, to make up for deductibles under the policies. (c) The lease purports to permit the lessee to assert an owner's rights in protest against any proposed parking assessment district. (d) The lease gives to the lessee the right to enlarge the building by construction in the air space over the parking garage, apparently without reference to the area involved (the number of stories would have to be known) and without provision for additional rent.

5) By a lease as distinguished from an outright sale, the lessee will be

charged a possessory interest tax only and will avoid tax on the land upon which the building rests, thus saving some 20 percent of the tax every year.

6) At the end of the 50 years, if the bank declines to exercise its option, being dissatisfied with the rental set by the appraiser, it has, nevertheless, a first refusal against another lessee by meeting the terms of the best bidder. It seems that this might have a chilling effect on competitive bidding.

7) It is alleged in the complaint that the reasonable ground rental for a 50-year lease of a lot of the value of the subject one is $1,855,000. Of course, prepayment would reduce this figure very substantially, and there is no doubt that this was considered by the council. A mere mistake in business judgment would not invalidate the transaction. (*Silver* v. *City of Los Angeles*, 57 Cal.2d 39 [17 Cal.Rptr. 379, 366 P.2d 651].) But in the *Silver* case, there was no pleading or proof (the appeal followed a trial, not a dismissal) of ultra vires acts. In the instant case, ultra vires (though not by the Latin words) essentially is pleaded. But since the entire transaction is to be examined judicially by a court of equity, the subject of the amount of rent, too, should be examined, not with a view to determining whether the present value of the commuted rentals would exactly match the agreed prepayment, but whether there is a reasonable relationship between the two.

We have examined above some of the principal points of the whole transaction. The lease does, it is true, provide that if any part of the lease be declared void or invalid this shall not affect the other parts. But a provision for severability will not save an entire transaction if it be ultra vires. Besides, although the action is for declaratory judgment as well as for injunction, the dismissal of the cause has prevented declaration as to any particular parts of the lease. In respondents' brief it is said that a purpose of the lease was to stabilize property values and business conditions in the central business district of Salinas by providing a long-range and predictable use of the property. For a city to give assistance to an individual or to a private corporation, even by an outright subsidy, might be advantageous to the city itself, particularly in encouraging a respected banking institution to construct an attractive building. But because of obvious reasons of public policy, direct assistance, as distinguished from that which is incidental to exercise of the city's governmental functions, cannot be sustained.

We conclude, as we commenced our examination of the particular transaction, by saying that the decision on all of the facts rests in the sound discretion of the trial judge, but that a sufficient case has been made by the pleading to require that such discretion be used.

There is a good deal of argument in the briefs about the validity of the two 10-year options. Appellant contends that since the city, by ordinance,

has allowed the leasing for commercial purposes of surplus properties (even assuming this property were truly surplus), for the *term authorized by law,* and since the city charter does not specify any term, the ordinance must refer to Government Code section 37395, which authorizes such leases for a term not to exceed 50 years. Respondents take the position that because leasing is a municipal affair, a limitation is not to be inferred, in the absence of a charter limitation, from the reference to terms authorized by law, but that in any event under the holding of *Harter* v. *San Jose,* 141 Cal. 659 [75 P. 344], the issue of legality of the options need not be decided until the initial term has expired. But the *Harter* case was decided before there was provision for declaratory judgments. It seems desirable that the matter be decided at this time if the lease be held legal in other respects. It further seems a better procedure for the trial court to adjudicate the matter, using any extrinsic aids that may be available to interpret the ordinance, than for the Court of Appeal presently to construe it.

The judgment of dismissal is reversed, with directions to the superior court to overrule the demurrer to the first amended complaint.

Rattigan, J., and Bray, J.,* concurred.

A petition for a rehearing was denied February 23, 1973, and respondents' petition for a hearing by the Supreme Court was denied March 21, 1973.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.