[No. A039971. First Dist., Div. Five. Jan. 11, 1989.]

RILEY M. GREEN, JR., Plaintiff and Appellant, v.
MT. DIABLO HOSPITAL DISTRICT, Defendant and Appellant;
TAXPAYERS OF THE MT. DIABLO HOSPITAL DISTRICT,
Respondent.

64

**COUNSEL**

Richard C. Raines, Gregory L. McCoy, Cynthia Love Marek and Thiessen, Gagen & McCoy for Plaintiffs and Appellants.

Douglas C. Straus, M. Jeffrey Micklas, Richard E. Norris, Colin J. Coffey and Norris & Norris for Defendant and Appellant.

David J. Levy, Arlene Segal and Trembath, McCabe, Schwartz, Evans & Levy for Respondent.

**OPINION**

**LOW, P. J.**—A petition to compel arbitration is properly denied where there are sufficient grounds alleging illegality of the underlying agreement. The allegations, if proved, would render the entire contract void. The legality of the contract should first be judicially determined before any contractual disputes may be arbitrated. It is within the trial court's discretion to decide whether the claims of third parties not bound by the arbitration agreement should be brought in one judicial forum. This does not circum-

vent the policy favoring arbitration, because should the court determine that all or a portion of the contract is untainted by illegality, it must submit those matters to arbitration.

Riley M. Green, Jr., appeals the denial of his petition to compel arbitration of disputes arising from an employment contract and a buy-out agreement between Green and defendant Mt. Diablo Hospital District (Hospital District). The trial court denied Green's petition pursuant to Code of Civil Procedure section 1281.2, subdivisions (b) and (c). Hospital District cross-appeals, contending that the trial court should have awarded attorney fees. We affirm.

On November 2, 1982, Green entered into a written employment agreement with the Hospital District to serve as its chief executive officer. The agreement specified a four-year term. The agreement further provided an "evergreen" clause which automatically extended Green's term for four years from each subsequent day of the contract period. The Board of Directors of the Hospital District (board) could terminate the contract by a majority vote and payment of 24 months salary, including a housing allowance, to Green. Green could terminate the agreement by giving 120 days notice. All disputes arising from the agreement were to be resolved through arbitration.

On December 10, 1985, the parties amended the agreement to require a four-fifths vote of the board to terminate the contract and extended Green's severance benefits from 24 months to 48 months. The amendment also changed the condition that nullified the agreement if Green intentionally committed illegal acts in the performance of his duties, to a condition that only nullified the agreement if "GREEN is convicted and proven to have intentionally committed a crime amounting to a felony, and involving moral turpitude."

In the November 1986 Hospital District election, Art Bacigalupo was reelected, but Charlotte Allen lost to Mary Mahoney. On November 18, 1986, Dr. Jason Appel, Director of the Hospital District, wrote to board member Bacigalupo requesting an executive meeting of the board to determine Green's future role with the Hospital District. In anticipation of his removal as chief executive officer, Green's counsel prepared a proposed termination agreement to establish a trust fund for the benefit of Green, and forwarded a copy of the trust agreement to the Hospital District's counsel. On November 28, 1986, the board met for the final time and approved a "buy-out" agreement for the benefit of Green and his wife. By a three-to-two vote, the board approved the agreement in a closed session and then

invited the public to attend the meeting, where it announced the approval of Green's proposed agreement.

The written contract required immediate termination of Green as chief executive officer and required the Hospital District to deposit $822,614 in a trust fund for Green. The contract guaranteed Green annual payments from the trust fund of $95,000 for life (more than his salary), and upon Green's death, payments of $47,500 annually for the life of Mrs. Green. Green also received comprehensive medical and dental insurance for Green and his family for the lifetime of Green and his wife, and a group life insurance policy on Green for $237,500. The contract allotted Green 14 years vested retirement credit for 10 years of actual service. Finally, the agreement contained an arbitration clause and provided for attorney fees to the prevailing party in the event of arbitration and reasonable attorney fees to the prevailing party in the event of litigation between the parties.

In December 1986, the new board of directors voted to rescind the November 28 agreement. On December 15, 1986, Green filed a claim under Government Code sections 910 and 910.2 against the Hospital District and individual board members, Jason Appel and John Baie. The claim alleged tortious breach of contract, bad faith breach of contract, tortious interference with prospective economic advantage, tortious interference with contractual relationships, conspiracy, breach of contract, and specific performance of the contract. Green's claim alleged damages for emotional distress for $100 million and requested punitive and exemplary damages in the amount of $100 million. Mrs. Joyce Green filed a similar claim.

On January 12, 1987, Taxpayers of the Mt. Diablo Hospital District (Taxpayers) filed a complaint for declaratory relief in Contra Costa County Superior Court. Taxpayers asked the court to rule the November 2, 1982, contract expired by its own terms, and that the December 1985 amendment and the November 1986 buy-out agreement be declared void and unconstitutional. Specifically, Taxpayers' complaint alleged: (1) the 1982 contract violated Health and Safety Code section 32121.5; (2) that the November 1982 and November 1986 agreements provided for illegal gifts of public funds; (3) that the December 1985 amendment violated public policy; (4) that the November 1986 buy-out agreement was the result of mistake of fact and fraud; (5) that Green initiated private meetings with certain board members to persuade them to accept the November 1986 agreement, in violation of the Ralph M. Brown Act (Brown Act); and (6) that the establishment of a separate trust fund for the benefit of Green violated Health and Safety Code section 32121, subdivision (e). The trial court found that these allegations encompass additional grounds for illegality in the supermajority provision of the December 1985 agreement and in extra compensa-

tion to a public official in the November 1986 buy-out agreement, in violation of California Constitution, article XI, section 10.

Green filed a petition to compel arbitration of the Taxpayers' complaint for declaratory relief, pursuant to the terms of the November 1982 and November 1986 agreements, and on August 13, 1987, the court denied Green's petition. The trial court relied on Code of Civil Procedure section 1281.2, subdivisions (b) and (c).

I

Code of Civil Procedure section 1281.2 provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (b) Grounds exist for the revocation of the agreement. [¶] (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. . . ."

■ In a petition to compel arbitration under Code of Civil Procedure section 1281.2, the moving party, in essence, requests specific performance of a contractual agreement to arbitrate the controversy. (*Los Angeles Police Protective League* v. *City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1146, fn. 3 [209 Cal.Rptr. 890], disapproved on other grounds in *Laurel Heights Improvement Assn.* v. *Regents of the University of California* (1988) 47 Cal.3d 376, 427, fn. 28 [253 Cal.Rptr. 426, 764 P.2d 278].) The trial court must determine in advance whether there is a duty to arbitrate the controversy. (*Parker* v. *Twentieth Century-Fox Film Corp.* (1981) 118 Cal.App.3d 895, 904 [173 Cal.Rptr. 639].) This determination "necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 [121 Cal.Rptr. 477, 535 P.2d 341].) The standard on appeal is whether there is substantial evidence to support the trial court's finding. (*Parker, supra,* 118 Cal.App.3d at p. 902.)

A

■ Relying on *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312 [197 Cal.Rptr. 581, 673 P.2d 251], Green contends that, at most, the Taxpayers' complaint alleged fraud in the

inducement of the written buy-out agreement. Since *Ericksen* held that an allegation of fraud in the inducement was not sufficient grounds for revocation of an agreement to arbitrate, Green contends that the trial court erred in denying Green's petition to compel arbitration. We disagree.

*Ericksen* involved a dispute between a tenant and its landlord for breach of contract arising out of faulty air conditioning in the leased premises. The tenant alleged, inter alia, that the landlord fraudulently induced the contract (the landlord never intended to repair the air conditioning), and argued that the fraud allegations were sufficient to defeat the contractual arbitration clause. The court ruled that so long as arbitration agreements are irrevocable, valid, and enforceable, arbitration should not be denied "upon the mere cry of fraud in the inducement." (*Id.,* at p. 318.) To hold otherwise would frustrate the purpose of arbitration—to provide a speedy and inexpensive trial before commercial specialists. The court noted that arbitration clauses are generally severable from the contract and that unless the fraud allegations are directed to the arbitration clause itself, " 'a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud. [Fn. omitted.]' " (*Id.,* at p. 319, quoting *Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395, 402 [18 L.Ed.2d 1270, 1276-1277, 87 S.Ct. 1801].) The allegation of fraud in the inducement of the lease agreement " 'seems inextricably enmeshed in the other factual issues of the case.' [Citations.] Indeed, the claim of substantive breach—that the air conditioning did not perform properly—is totally embraced within the claim of fraud . . . ." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street, supra,* 35 Cal.3d at p. 324.)

*Ericksen,* however, noted an exception to the general rule that mere allegations of fraud will not defeat a contractual arbitration clause. ■ Fraud that permeates the entire contract, including the arbitration provision, vitiates the arbitration and requires judicial determination. (*Id.,* at p. 323, fn. 8, citing *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 27 [136 Cal.Rptr. 378].) Although the *Ericksen* court found the permeation doctrine to be inapplicable to the facts of that case, the court in *Ford* v. *Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011 [225 Cal.Rptr. 895], applied the permeation doctrine to a claim under the federal Arbitration Act. In *Ford, supra,* the court distinguished *Ericksen* by noting that the fraud asserted in *Ericksen* concerned fraud in the performance of the contract and that the fraud alleged was a " 'disappointed expectation' " concerning such performance. (*Ford, supra,* 180 Cal.App.3d at pp. 1019, 1022. ) The fraud alleged did not concern the " 'making' " or procurement of the contract itself. (*Id.,* at p. 1019.) Since Ford alleged he did not voluntarily assent to the contract, "the fraud . . . goes to the 'making' of the contract, which, if proven, would void the

agreements and the arbitration clause contained therein." (*Ibid.*) Ford sufficiently alleged that he was induced by fraud to make the agreements and that his assent to the agreements was involuntary. The issue of fraud and undue influence must first be determined by a court, not by arbitration. (*Id.,* at p. 1023.)

The Taxpayers allege that Green's contracts with the Hospital District are in violation of the Health and Safety Code, the Brown Act, and the California Constitution. If the Taxpayers prove the allegations, the question becomes whether these violations would void the entire agreement or only certain illegal provisions within the contract. ■ To avoid arbitration, the illegality "must be such as renders the entire contract illegal and unenforceable; and that a claim of illegality of one of the incidental clauses of the contract that falls short of affording ground for revocation of the contract is itself subject to arbitration." (*California State Council of Carpenters* v. *Superior Court* (1970) 11 Cal.App.3d 144, 157 [89 Cal.Rptr. 625].)

■ The Taxpayers' allegations of illegality go to the heart of the buy-out agreement and are not "incidental." The Taxpayers allege that the evergreen clause in the November 1982 employment agreement between Green and the Hospital District violates Health and Safety Code section 32121.5. That provision states, "Notwithstanding any other provision of this division, a local hospital district may enter into a contract of employment with a hospital administrator, the duration of which shall not exceed four years, but which may periodically be renewed upon expiration for not more than four years." Because the November 1982 employment agreement calls for perpetual renewal of the contract, and not renewal upon expiration of the contract term, the Taxpayers contend that the agreement violates the statute. The trial court, citing *Keene* v. *Harling* (1964) 61 Cal.2d 318, 321, 324 [38 Cal.Rptr. 513, 392 P.2d 273], determined that the evergreen clause is not severable from the agreement since it could not ascertain which portion of the consideration for the agreement corresponded to the evergreen clause. The trial court found that if the evergreen clause is illegal, it serves to void the entire agreement. In our review of the agreement, we cannot ascertain which portion of the consideration corresponds to the evergreen clause. The point, however, is somewhat irrelevant since even if the clause could be severed from the underlying agreement, the contract would expire in November 1986, the end of the four-year period. Since Green's employment with the Hospital District terminated under the November 1986 buy-out agreement, the crux of the Taxpayers' action concerns the provisions of the November 1986 buy-out agreement between Green and the Hospital District.

The Taxpayers allege that the subject matter of the November 1986 contract, the establishment of a trust fund to pay Green certain benefits,

including payments of $95,000 annually for life, is an illegal gift of public funds. California Constitution, article XVI, section 6 provides in part: "The Legislature shall have no power to . . . make any gift or authorize the making of any gift, of any public money or thing of value to any individual . . . ." ■ Courts have invalidated payments of public funds to private persons under this provision unless there is either (1) full consideration or (2) an overriding public purpose for the payment. (*California Teachers Assn.* v. *Board of Trustees* (1978) 82 Cal.App.3d 249, 257 [146 Cal.Rptr. 850].) ■ Thus, if the Taxpayers prove that the trust fund is an illegal gift of public funds to a private individual, that illegality serves to invalidate the entire buy-out agreement.

The Taxpayers also allege that the trust agreement constitutes payment of extra compensation in violation of California Constitution, article XI, section 10, subdivision (a). That subdivision provides: "A local government body may not grant extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part, or pay a claim under an agreement made without authority of law." The Taxpayers contend that since the trust agreement compensated Green after his employment with the Hospital District, the trust payments to Green and his wife constitute extra compensation in violation of article XI. If proven, such extra compensation is barred by the Constitution. (*Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 23 [157 Cal.Rptr. 706, 598 P.2d 866].)

The Taxpayers contend that the Hospital District's approval of the trust agreement in a closed session of the board violates the Brown Act, codified in Government Code section 54950 et seq. The Taxpayers also cite Green's private lobbying of board member Bacigalupo as a violation of the Brown Act. Section 54953 of the Government Code provides: "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." Although it is unclear whether Brown Act violations require courts to invalidate actions taken in prohibited closed sessions (see *Santa Clara Federation of Teachers* v. *Governing Board* (1981) 116 Cal.App.3d 831, 846 [172 Cal.Rptr. 312] [Brown Act violation does not invalidate school board's decision to terminate certain certificated employees]), courts have enjoined local government bodies from conducting their affairs in closed sessions. (*San Diego Union* v. *City Council* (1983) 146 Cal.App.3d 947, 956-957 [196 Cal.Rptr. 45].)

The Taxpayers also assert that the Hospital District acted ultra vires in approving the trust agreement for the benefit of Green and his wife. Health and Safety Code section 32121 delineates the authority of hospital districts

and provides in part: "Each local hospital district shall have and exercise the following powers: [¶] (e) To establish one or more trusts *for the benefit of the district,* to administer any trust declared or created *for the benefit of the district,* to designate one or more trustees for trusts created by the district, to receive by gift, devise, or bequest, and hold in trust or otherwise, property, including corporate securities of all kinds, situated in this state or elsewhere, and where not otherwise provided, dispose of the same *for the benefit of the district.*" (Italics added.) The Taxpayers contend that since the trust agreement benefitted Green and his wife, not the Hospital District, the Hospital District acted outside the scope of its authority in approving Green's trust agreement. If proven, the Hospital District's approval of the trust agreement would be invalid. (See *Rathbun* v. *City of Salinas* (1973) 30 Cal.App.3d 199, 203 [106 Cal.Rptr. 154] [taxpayers may maintain a cause of action to void ultra vires action of city council].)

Finally, the Taxpayers assert that Green's receipt of the benefits of the trust agreement constitutes a conflict of interest of a public official. If proven, Green's conflict of interest would also serve to void the agreement. (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 649 [214 Cal.Rptr. 139, 699 P.2d 316].)

These allegations go to the "making" of the contract, not to a mere "disappointed expectation" in the performance of the contract. Indeed, the Taxpayers' action is one for declaratory relief asking that the court determine the agreements are illegal so that their terms will not be performed. Moreover, the allegations give rise to far more than mere fraud in the inducement of a contract. They imply that the entire agreement is illegal from its inception and against public policy. ■ Contracts that are contrary to express statutes or to the policy of express statutes, such as those delineated by the Taxpayers, are illegal contracts. (Civ. Code, § 1667, subds. (1), (2).) Any such illegality voids the entire contract. (*Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 609 [204 P.2d 23].) Code of Civil Procedure section 1281.2 "does not contemplate that the parties may provide for the arbitration of controversies arising out of contracts which are expressly declared by law to be illegal and against the public policy of the state." (*Id.,* at p. 610.)

■ Green, relying on *Loving & Evans* v. *Blick, supra,* argues that the trial court may only deny arbitration if the grounds existing for revocation of the contract are supported by uncontroverted evidence. Since the declaration of Green contradicts certain allegations in the declaration of Bacigalupo, Green argues that the trial court had insufficient evidence of grounds for revocation of the agreements. We disagree.

In *Loving & Evans, supra,* two contractors arbitrated their claim for money for repairing and remodeling appellant's premises. The arbitrator awarded the contractors $5,739.87 despite a stipulation between the parties that one of the contractors did not possess a contractor's license pursuant to the Business and Professions Code. The contractors then sought an order confirming the arbitration award, and appellant moved to set aside the award on the ground that the contract was illegal since one of the parties was not a licensed contractor. The trial court considered the declarations of the arbitrator concerning the stipulation and the declarations of the appellant's and respondents' counsel. The declarations all alleged that one of the contractors was not licensed. Based on these declarations, the trial court affirmed the arbitration award. The California Supreme Court reversed stating, "If . . . it appears to the court from the uncontradicted evidence that the contract is illegal, the court should deny the petition 'for an order directing the parties to proceed to arbitration.'" (33 Cal.2d at p. 610.)

The trial court had before it the declaration of board member Bacigalupo, the declaration of Hospital District's chief financial officer, the declaration of William Hooy, who attempted to attend the "closed" session of the board, a series of newspaper articles concerning Green's benefits under the buy-out agreement, and the declaration of Green which denied that he made any misrepresentations to Bacigalupo concerning the financial consequences to the Hospital District of the buy-out agreement. The only controversies presented by the declarations concerned Brown Act violations, fraud, and constructive fraud by Green. Arguably, the declarations could also place in controversy whether Green violated the prohibition against conflicts of interest by a public official. The declarations, however, did not place in controversy constitutional violations of illegal gifts of public funds and extra compensation to public officials, an ultra vires action by the board in creating a trust for the benefit of Green, and the validity of the evergreen clause under Health and Safety Code section 32121.5. Moreover, we believe that Green's reading of *Loving & Evans, supra,* 33 Cal.2d 603, to require uncontradicted evidence of illegality is too formalistic. The court did not explicitly condition its holding on the existence of uncontroverted evidence. Rather, the case merely stands for the proposition that the legality of the underlying agreement should first be judicially determined. We conclude that the trial court's denial of Green's petition to compel arbitration falls within Code of Civil Procedure section 1281.2, subdivision (b).

B

■ The trial court, relying on *C. V. Starr & Co.* v. *Boston Reinsurance Corp.* (1987) 190 Cal.App.3d 1637 [236 Cal.Rptr. 167], also denied Green's petition to compel arbitration pursuant to Code of Civil Procedure section

1281.2, subdivision (c). On appeal, Green argues that *C. V. Starr* should not apply since the present action does not create the potential for conflicting rulings as required by section 1281.2, subdivision (c). We reject Green's contention.

*C. V. Starr* involved a dispute among 11 reinsurers arising from a judgment against an insured for $24.9 million. Granite Insurance paid the $24.9 million judgment and sought reimbursement from 11 reinsurers. C. V. Starr acted as Granite's underwriting manager and assignee, and sought to allocate the reimbursements among the reinsurers. When negotiations were unsuccessful, C. V. Starr sued the 11 reinsurers for breach of the reinsurance contract. Two of these reinsurers, Gerling Global Reinsurance Corporation and Boston Reinsurance Corporation, moved to dismiss the action or to stay the proceeding pending arbitration. Gerling's agreement contained an arbitration clause and Boston had later agreed to arbitrate. The trial court denied the motion based on Code of Civil Procedure section 1281.2, subdivision (c).

The Court of Appeal affirmed the trial court's ruling, holding that the court's decision was based on substantial evidence that the dispute could lead to conflicting rulings. (190 Cal.App.3d at p. 1640.) The court noted that since only one of the eleven reinsurers was bound by an arbitration clause, arbitration of the one action could leave C. V. Starr either over- or under-indemnified, depending upon the findings of the arbitrator on the one hand and the trial court on the other. (*Id.,* at p. 1641.) The court then noted that the optimal procedure in this action is a single proceeding for all parties to determine the liability of each reinsurer. (*Id.,* at p. 1642.) Since Code of Civil Procedure section 1281.2, subdivision (c) authorizes the trial court to bring all the parties within one forum, the Court of Appeal concluded that the trial court was within its discretion to so order. (*Id.,* at pp. 1642-1643.)

The Taxpayers seek a declaration that the November 1982 employment agreement and the November 1986 buy-out agreement are void as illegal and against public policy. If true, these allegations would render any breach of contract issues between Green and the Hospital District moot, since the illegality serves to void the entire contract. It is conceivable that arbitration of these issues could lead to conflicting rulings. For example, if the arbitrator found in favor of Green and ordered the Hospital District to perform its contract, any finding of illegality in the Taxpayers' declaratory relief action would be in direct conflict with the arbitrator's award. Moreover, the Taxpayers are not subject to arbitration. Their causes of action, therefore, could not be resolved in an arbitration between Green and the Hospital District. This is true even though the Hospital District might argue the same bases of illegality alleged by the Taxpayers. As the trial court pointed out, these

issues implicate the integrity of public officials, and, as such, are subject to public scrutiny. The trial court, therefore, properly considered the potential for conflicting rulings in denying Green's petition to compel arbitration.

## II

■ On cross-appeal, Hospital District contends that the trial court improperly denied an award of attorney fees as provided by the terms of the contract.[1] We first note that if the underlying agreement is voided by illegalities, the entire contract must fail, including the attorney fees provision. The Hospital District, however, relying on *Lachkar* v. *Lachkar* (1986) 182 Cal.App.3d 641 [227 Cal.Rptr. 501], argues that the order denying the petition to compel arbitration is a final determination of the arbitration, and that Hospital District, as the "prevailing party," is entitled to attorney fees. We disagree.

In *Lachkar, supra,* the trial court granted plaintiffs' petition to compel arbitration and awarded attorney fees and costs to plaintiffs. The Court of Appeal reversed, finding that Civil Code section 1717 defines "prevailing party" for purposes of a contractual right to recover attorney fees as " 'the party in whose favor final judgment is rendered.' " (182 Cal.App.3d at p. 646.) Citing to *La Pietra* v. *Freed* (1978) 87 Cal.App.3d 1025 [151 Cal.Rptr. 554], the court noted there could be no final determination between the parties at the time of a motion to compel arbitration. If arbitration is ordered, the arbitrator could determine that some of the issues are nonarbitrable, or if the arbitration proceeds to an award, the award is subject to final confirmation by the superior court, and that confirmation is subject to appeal. (*Lachkar, supra,* 182 Cal.App.3d at p. 647.) The court concluded that an appeal from the final confirmation of the arbitration award would be the final determination of the rights of the parties. (*Ibid.*)

In this action, the trial court has not reached the merits of the case. The trial court simply ruled that Taxpayers' action for declaratory relief and Green's breach of contract claim against the Hospital District are subject to judicial determination of whether or not the agreement is illegal. The trial court, therefore, correctly concluded that there has been no final determination of the rights of the parties and properly denied Hospital District's request for attorney fees.

---

[1] The November 1986 buy-out agreement states, "The arbitrators therein shall be entitled to award, in addition to any other relief granted, attorney's fees to the prevailing party. In the event of any litigation between the parties to this Agreement, the prevailing party therein shall be entitled to recover, in addition to any other relief awarded, reasonable attorney's fees incurred."

The same rationale applies to an award of costs incurred in defending an action on the contract. Code of Civil Procedure section 1293.2 provides that "[t]he court shall award costs upon any judicial proceeding under this title . . . ." This provision, however, only encompasses those actions which have reached a final determination. (See *California Teachers Assn.* v. *Governing Board* (1984) 161 Cal.App.3d 393, 400 [207 Cal.Rptr. 659].) The Hospital District's request for costs and attorney fees is premature. If the Hospital District "prevails" in its action against Green, it is within the trial court's jurisdiction to award costs and attorney fees to the prevailing party, so long as there has been a final determination of the rights of the parties. (See *Lachkar, supra,* 182 Cal.App.3d at p. 647.)

The judgment is affirmed.

King, J., and Haning, J., concurred.

The petition of appellant Green for review by the Supreme Court was denied March 29, 1989.