[No. D050450. Fourth Dist., Div. One. Mar. 27, 2008.]

ELAINE M. DUFFENS et al., Plaintiffs and Respondents, v.
IRENE C. VALENTI et al., Defendants and Appellants.

438

## Counsel

Higgs, Fletcher & Mack and David R. Clark for Defendants and Appellants.

Gilliland & Gilliland and Douglas S. Gilliland for Plaintiffs and Respondents.

## Opinion

**HUFFMAN, Acting P. J.**—Plaintiffs and respondents Elaine M. Duffens, Sandra Marnell, and Sandy Shaulis (collectively respondents) brought an action against Irene C. Valenti, Valenti International Limited, LLC, and Valenti International Foundation, Inc. (collectively Valenti), for general, special, and treble damages based on allegations of fraud and statutory violations of Civil Code section 1694 et seq. in the individual matchmaking consulting agreements sold to them by Valenti.[1] Section 1694 et seq., referred to here as the dating service statutes, prescribe certain standards and language that must be included in dating service contracts. Valenti brought a motion to compel arbitration, arguing that the arbitration clause within the matchmaking consulting agreement was severable and enforceable, regardless of any potential defenses to the underlying contract liability. (Code Civ. Proc., §§ 1281, 1281.2.) The superior court denied the motion, concluding the arbitration clause was unenforceable because it was contained within an agreement that lacked essential language required by the statutory scheme, and the agreement was entered into under misleading circumstances, also a violation of statute. (§§ 1694.3, 1694.4, subds. (a), (b).)

On appeal, Valenti argues the superior court erred when it determined the agreements were illegal under California law, and that in any case, the arbitration clauses within them should have remained enforceable under state

---

[1] All further statutory references are to the Civil Code unless otherwise noted.

or federal law. Resolving these arguments requires us to analyze, under the standards of *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 402 [58 Cal.Rptr.2d 875, 926 P.2d 1061] (*Rosenthal*), the particular causes of action in the underlying complaints, for purposes of determining arbitrability of fraud allegations related to contract (fraud in the inception or execution, as opposed to fraud in the inducement). (*Id.* at pp. 414–419.) We address respondents' defenses against the enforcement of illegal contracts, and further, the public policy preferences for enforcing arbitration agreements where appropriate, such as cases in which fraudulent inducement of an agreement is alleged. (*Ibid.*) We conclude that under California law, these "consulting agreements" are part of a small class of contracts regulated by specific statutes that expressly render nonconforming contracts void and unenforceable. Because the agreements sued upon violated express requirements of the dating service statutes that clearly apply here, they are void and unenforceable, and their arbitration provisions are likewise not enforceable. (§ 1694.4, subd. (a).) We affirm the superior court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Respondents individually entered into three-year "consulting agreements" (the agreements) with Valenti for matchmaking services. The agreements stated that the company was not intended to be a dating service, but rather, "[i]t is a matchmaking service in the traditional sense." In exchange for respondents' retainer fees,[2] Valenti promised to help respondents establish "personal relationships" by analyzing their personal data and matching them with eligible persons of the opposite sex. Each agreement contained a clause, which respondents individually initialed, that required the parties to submit disputes to arbitration.[3] The arbitration clauses were followed by provisions stating that California provided the governing law and the forum for resolution of any disputes arising under or relating to the agreement. Some of the agreements added that this forum would be the superior court in San Diego. The agreements further provided in two places that the retainer fees paid would be completely nonrefundable and were distributed directly toward time spent by staff psychologists in the evaluation process and personal consulting and coaching, among other things.

On October 13, 2006, respondents filed a complaint for damages claiming Valenti made fraudulent misrepresentations about the characteristics of the other clients to whom Valenti could introduce them. Respondents alleged

---

[2] Duffens paid $20,000, Shaulis paid $50,000, and Marnell paid $75,000.

[3] The arbitration clauses required a panel of three arbitrators. Each party had the ability to choose one arbitrator and the third arbitrator would be chosen by the first two. The clauses required that the third arbitrator have at least seven years of experience as "a Ph.D. Psychologist, specializing in marriage and family counseling."

Valenti claimed to have a network of employees who recruited and screened high-level, wealthy, single potential romantic partners throughout the United States and internationally, and Valenti promised it had such wealthy, successful persons as active clients. Respondents alleged Valenti never had any suitable matches to introduce to them and had therefore obtained their assent to the agreements through these misrepresentations. Respondents argued the agreements violated the dating service statutes because the services to be provided fell within the scope of the statutory scheme, but did not comply with statutory requirements. Respondents further alleged the contracts were void and unenforceable for violating these statutes because they were entered into in reliance on "willful and fraudulent or misleading information or advertisements" by Valenti. Respondents requested damages for lost retainer money and for emotional distress, as well as treble damages under section 1694.4, subdivision (c).

On December 5, 2006, Valenti filed a motion to compel arbitration. On January 9, 2007, respondents filed opposition to the motion, arguing the agreements, and arbitration clauses contained therein, were void and unenforceable because they (1) were permeated with fraud, (2) violated the dating service statutes, and (3) were unconscionable.

On January 19, 2007, the superior court denied Valenti's motion to compel arbitration. The ruling stated the agreements violated the dating service statutes, by failing to contain provisions complying with section 1694.3. That section requires such contracts to have provisions that address the purchaser's or successor's rights to relief from contractual obligations in the event of death or disability of the purchaser, and that allow for refunds and relief from contractual obligations in the event that the buyer relocates his or her primary residence more than 50 miles from the dating service office. (§ 1694.3, subds. (a), (b).) The court impliedly found another violation of the dating service statutes when it noted in its ruling: "Also, it is alleged that the contracts were entered into under misleading circumstances." (§ 1694.4, subd. (b) ["Any contract for dating services entered into under willful and fraudulent or misleading information or advertisements of the seller is void and unenforceable."].)

Valenti appeals the order.

## DISCUSSION

## I

## *INTRODUCTION AND STANDARDS OF REVIEW*

These actions are based upon respondents' individual agreements under which they were entitled to a three-year period of Valenti's matchmaking services. We must interpret these agreements to evaluate the enforceability of the arbitration clauses they contained, in light of various provisions of the statutory scheme for measuring the validity of comparable "dating service contracts." (§ 1694 et seq.) That statutory scheme contains various provisions that are raised as defenses to the enforceability of these agreements.

In reviewing the superior court's order denying the petition to compel arbitration, we apply basic rules for interpreting contracts, to analyze both the agreement and the arbitration clause within it. (*Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 713–714 [129 Cal.Rptr.2d 659] (*Fittante*).) An "arbitration agreement is subject to the same rules of construction as any other contract, including the applicability of any contract defenses." (*Id.* at p. 713.) "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. [Citations.] In other words, . . . an arbitration agreement may only be invalidated for the same reasons as other contracts." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 [99 Cal.Rptr.2d 745, 6 P.3d 669], fn. omitted.)

"A motion to compel arbitration is, in essence, a request for specific performance of a contractual agreement. The trial court is therefore called upon to determine whether there is a duty to arbitrate the matter; necessarily, the court must examine and construe the agreement, at least to a limited extent. Determining the validity of the arbitration agreement, as with any other contract, ' "is solely a judicial function unless it turns upon the credibility of extrinsic evidence; accordingly, an appellate court is not bound by a trial court's construction of a contract based solely upon the terms of the instrument without the aid of evidence." [Citation.]' " (*Fittante, supra,* 105 Cal.App.4th 708, 713, fn. omitted.)

Courts may be called upon to determine the legality of contracts either before or after arbitration has taken place. Regarding the first situation, in 1 Witkin, Summary of California Law (10th ed. 2005) Contracts, section 450, pages 491–492, the authors explain the holding of *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 33 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*)

in this way: Case authorities "do not authorize judicial review where but a single provision is challenged on the ground of illegality. In that situation, the proper rule is as follows: '[T]he normal rule of limited judicial review may not be avoided by a claim that a provision of the contract, construed or applied by the arbitrator, is "illegal," except in rare cases when according finality to the arbitrator's decision would be incompatible with the protection of a statutory right.' [Citation.]" (1 Witkin, Summary of Cal. Law, *supra,* § 450, pp. 491–492.) In our case, the request for a determination of illegality of the contract is made as a defense to arbitrability, similarly based on statutory rights.

■ In ruling upon a petition to compel arbitration, the superior court is allowed to determine arbitrability issues, such the existence and validity of the arbitration agreement, by utilizing summary motion procedures. (*Rosenthal, supra,* 14 Cal.4th 394, 409.) These procedures are consistent with the use of private arbitration as a means of resolving disputes quickly and inexpensively. (*Ibid.*) "[T]he superior court does not decide whether the plaintiff's causes of action have merit, although some factual questions considered in deciding the application may overlap those raised by the plaintiff's claims for relief. The only question implicated by the petition to compel arbitration is whether the arbitration agreements should be specifically enforced. . . . [T]he superior court decides only the facts necessary to determine specific enforceability of an arbitration agreement, an equitable question as to which no jury trial right exists." (*Id.* at p. 412.)

We first set forth Valenti's arguments on appeal, in which they seek to have the arbitration clauses enforced as severable from the agreements themselves. We then outline the types of challenges respondents have pleaded in their complaints, as well as their asserted defenses to the enforcement of the arbitration clause. Those defenses allege that the agreements failed to include terms and material required by California statutes, were entered into under misleading circumstances, and were therefore void and unenforceable. We evaluate the record to determine if the order was correct as a matter of law. (*Rosenthal, supra,* 14 Cal.4th at p. 412.)

II

*ISSUES PRESENTED*

On appeal, Valenti fails to address the validity of the agreements with respect to the dating service statutes, despite the fact that this issue was pleaded in respondents' complaint and opposition in the trial court, was

briefed by respondents in this court, and was the express basis of the trial court's ruling. Instead, Valenti generally relies on the strong California preference for enforcing arbitration agreements, and contends arbitrators have sole authority to decide the legality of the contracts and arbitration clauses. For the first time on appeal, Valenti also seeks a determination that the Federal Arbitration Act (FAA), 9 United States Code section 1 et seq., governs these agreements such that arbitration should be compelled because of the strong federal policy in favor of enforcing arbitration agreements.

We cannot reach the issues of whether the state and federal public policies in favor of arbitration must be applied here without first analyzing the validity of the agreements and the applicability to them of the dating service statutory scheme. This requires an understanding of the nature of the causes of action pled in the complaint. It also requires statutory interpretation and application to these undisputed facts.

### A. Key Provisions of These Agreements; Nature of Causes of Action: Contract and Fraud

As a threshold matter, we first address the proper characterization of these "matchmaking" agreements. Under California law, a "dating service contract" is "any contract with any organization that offers dating, matrimonial, or social referral services by any of the following means: [¶] (a) An exchange of names, telephone numbers, addresses, and statistics. [¶] (b) A photograph or video selection process. [¶] (c) Personal introductions provided by the organization at its place of business. [¶] (d) A social environment provided by the organization intended primarily as an alternative to other singles' bars or club-type environments." (§ 1694, subds. (a)–(d).)

Respondents' agreements with Valenti provided: "Valenti International is not intended to be a 'dating service.' It is a matchmaking service in the traditional sense." Whatever "matchmaking service in the traditional sense" means, the language of Valenti's consulting agreements expressly promised to "assist each client to the best of its ability in establishing personal relationships with persons of the opposite sex by studying and assessing each client's personal profile/data and then providing introductions on a one-to-one basis to each client." Specifically, Valenti promised to facilitate "[a]n exchange of names, telephone numbers, addresses, and statistics" (§ 1694, subd. (a)) and arrange "[p]ersonal introductions provided by the organization at its place of business" (§ 1694, subd. (c)). The clients were required to provide "lifestyle photos of themselves for use in-house." All these components are the functional equivalent of the services governed by the dating service statutes,

and therefore the trial court correctly concluded on the existing record that Valenti operated as a dating service. A party may not shield itself from this regulatory scheme by simply stating it is not a dating service when its activities are of the same nature and it functions as one.

We next outline other provisions of the agreements that are integral to the arbitrability and statutory interpretation questions presented. Specifically, the agreements provided twice, in the sections for "client responsibilities" and "general provisions," that "the client understands that the retainer fees paid are completely nonrefundable and are distributed directly toward time for the [staff psychologists], personal consulting/coaching, the psychological evaluation process, time spent working directly or indirectly on the Client's file, general advertising, marketing necessary to attract suitable individuals for successful matches and for time and effort to maintain the client file over a three year period." The arbitration clause required a panel of three arbitrators. Each party had the ability to choose one arbitrator and the third arbitrator would be chosen by the first two. The clause required that the third arbitrator have at least seven years of experience as "a Ph.D. Psychologist, specializing in marriage and family counseling."

The majority of these agreements contain a choice of law and choice of forum clause that directly follows the arbitration clause, and reads as follows: "This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California." In some of the agreements, this governing law and choice of forum clause is supplemented by language as follows: "The sole forum for resolving disputes arising under or relating to this agreement is the Superior Court for the County of San Diego, California and the parties hereby consent to the jurisdiction of such court and waive any objections to jurisdiction and venue."

Based upon these agreements, respondents plead causes of action for fraud and for breach of statutory duties imposed by the dating service statutes. The latter theory, seeking to recover for a liability established by statute, is often treated "as quasi-contractual, i.e., as a contract 'implied' in law." (3 Witkin, Cal. Procedure (4th ed. 1997) Actions, § 138, pp. 202–203.) In 1A California Jurisprudence 3d (2006) Actions, section 24, page 61, the authors state: "An action on an obligation created by statute may or may not be contractual in nature. Thus, a contract may be implied to perform the statutory duty, or the action may be classified as in tort where the plaintiff seeks damages for violation of the statutory duty." (Fns. omitted.)

Each of the alternative theories pled seeks compensatory damages for recovery of the fees paid for services not rendered, emotional distress damages, treble damages as provided by statute, and other declaratory relief. (§ 1694.4, subd. (c).) Each theory is grounded in the basic allegations that the plaintiff suffered financial loss and related emotional injury, due to the misrepresentations made about the nature of the services to be rendered and the concealment that there was no actual ability to deliver them. We next examine the nature of those representations, since California law recognizes there are different varieties of fraud affecting contractual relationships, but the parties' arguments do not clearly distinguish among them.

### B.   Distinctions: Fraud in the Execution/Fraud in the Inducement of the Contract; "The Permeation Doctrine"

■ In *Rosenthal, supra*, 14 Cal.4th 394, 402, the California Supreme Court drew certain distinctions among different varieties of fraud with respect to arbitration and contract law. *Rosenthal* was a complex securities fraud case in which the parties did not dispute that the FAA applied, because those transactions involved interstate commerce. As such, the court stated the questions concerning arbitrability of the parties' dispute were governed by the FAA. After setting forth the language of 9 United States Code section 2 of the FAA, the Supreme Court in *Rosenthal* explained there are close parallels between California law and federal law with respect to the enforceability of arbitration clauses: "Code of Civil Procedure section 1281, like section 2 of the [FAA], provides that predispute arbitration agreements are 'valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' Code of Civil Procedure section 1281.2 (hereafter section 1281.2), like the [FAA's] section 4, provides a procedure by which a party may petition the court to order arbitration of a controversy. Under section 1281.2, as under section 4 of the [FAA], the court may deny the application if it finds the party resisting arbitration did not in fact agree to arbitrate." (*Rosenthal, supra*, at p. 406.) The court in *Rosenthal* further noted that a petition to compel arbitration may be denied under Code of Civil Procedure section 1281.2, if grounds exist for "revocation" of the arbitration agreement. (*Rosenthal, supra*, at pp. 406–407, fn. 4.)

The authors of Knight et al., California Practice Guide: Alternative Dispute Resolution (The Rutter Group 2007) Contracts, paragraph 5:111, page 5-81 (rev. #1, 2007) (Alternative Dispute Resolution) observe that the statutory term " '[r]evocation of a contract' is a misnomer under California law. *Offers* are 'revoked' [citation]. Contracts are extinguished by *rescission*. [Citations.] [¶] The grounds for rescission under California law include mistake, lack of

capacity, undue influence, material failure of consideration, duress, illegality . . . and, of course, fraud. [Citations.]" These authors further explain, "The California Arbitration Act [citation] and the Federal Arbitration Act [citation] allocate authority for deciding defenses to enforcement of an arbitration provision in varying ways and are *not* always consistent with each other." (*Id.*, ¶ 5:111.2, p. 5-81.)

Although in *Rosenthal* the Supreme Court was discussing what proper procedures should be followed in California courts in cases where the FAA governs arbitrability of the controversy, the court was interpreting California law on the general subject of the distinctions between fraud in the execution of an agreement, and fraud in the inducement of an agreement, in the context of discussing the sufficiency of the evidence. Those statements and definitions of the substantive law of fraud are equally applicable in this California case, in which the arbitration clause does not mention the FAA. The Supreme Court's discussion of fraud theories expressly repudiated an alternative means of expressing these concepts, specifically, the "permeation doctrine," because the permeation doctrine concepts are "identical or very similar to fraud in the inception or execution of a contract." (*Rosenthal, supra,* 14 Cal.4th 394, 418.) Therefore, the permeation doctrine is merely another name for fraud in the execution of a contract and is unnecessary. "Seeing, therefore, no legally valid use for the theory, we decline further to recognize it." (*Id.* at p. 419.)[4]

■ Rather, as explained in *Rosenthal*, the correct analysis in determining an arbitrability question that is based on a claim of an invalid agreement will use the following definitions. First, an arbitration clause will not be enforced if it is found within an agreement that may properly be judicially determined to be void for fraud in the execution or fraud in the inception, such that there was never any existing agreement in the first place, and this determination includes any arbitration clause within the basic agreement; fraud in the execution voids the entire agreement. (*Rosenthal, supra,* 14 Cal.4th at pp. 415–419.)

Nevertheless, an arbitration clause may be subject to enforcement even where a challenge exists to the validity of the overall agreement, if the challenge is based upon fraud in the inducement, and if the FAA applies. The reason for this is that under *Prima Paint v. Flood & Conklin* (1967) 388 U.S. 395, 404 [18 L.Ed.2d 1270, 87 S.Ct. 1801], an FAA case, "claims of fraud in the inducement of the contract generally," that is, fraud claims not going " 'to the "making" of the agreement to arbitrate,' are to be decided by the arbitrator rather than the court," unless the parties have agreed otherwise

---

[4] Although the parties continue to discuss this permeation theory, the better approach utilized in *Rosenthal, supra,* 14 Cal.4th 394, is to use the concepts of and distinctions between fraud in the inception/execution, and fraud in the inducement.

(*Rosenthal, supra*, 14 Cal.4th at p. 419). There, the Supreme Court states that section 1281.2 embodies the same standard of enforceability as in the FAA. (*Rosenthal, supra*, at p. 415; *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 322–323 [197 Cal.Rptr. 581, 673 P.2d 251] (*Ericksen*).)

■ Thus, "California law distinguishes between fraud in the 'execution' or 'inception' of a contract and fraud in the 'inducement' of a contract. In brief, in the former case ' "the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void*. In such a case it may be disregarded without the necessity of rescission." ' [Citation.] *Fraud in the inducement, by contrast, occurs when ' "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable. In order to escape from its obligations the aggrieved party must rescind . . . ."* ' [Citation.]" (*Rosenthal, supra*, 14 Cal.4th 394, 415, some italics added.)

This type of analysis requires courts to deem that claims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law. Likewise, claims that a party has employed fraud in inducing consent specifically to the arbitration agreement (e.g., by actively concealing its existence or misrepresenting its meaning or value) are, under federal or state law, to be decided by the court, because they go to the validity of the making of the arbitration clause itself. (*Rosenthal, supra*, 14 Cal.4th at pp. 415–419.) (Here, it is undisputed that respondents knew the nature of their acts when they entered into the contracts, and they are not claiming fraud in the execution or inception.)

■ Next, under the facts in *Rosenthal*, "claims that the contract as a whole was obtained through fraud in the inducement are, in the absence of evidence of the parties' contrary intent, arbitrable . . . . Included in this rule of arbitrability are claims of a 'grand scheme' of fraud, or fraud 'permeating' the transaction." (*Rosenthal, supra*, 14 Cal.4th 394, 419.)

■ In *Moncharsh, supra*, 3 Cal.4th 1, the Supreme Court acknowledged that when an illegal contract that is correctly subject to revocation contains an arbitration agreement, the arbitration agreement will not be enforced. (*Id.* at p. 29.) However, "when—as here—*the alleged illegality goes to only a portion of the contract* (that does not include the arbitration agreement), the entire controversy, including the issue of illegality, remains arbitrable.

[Citations.]" (*Id.* at p. 30, italics added). In making that distinction, the Supreme Court in *Moncharsh* took care to distinguish the authority of *Ericksen, supra*, 35 Cal.3d 312, as follows: "In that case, we held that when one party to an arbitration agreement claimed fraud in the inducement of the contract, the entire controversy was nevertheless an arbitrable one, and the question of whether fraud existed was properly determined by the arbitrator, and not by a court of law: Although fraud in the inducement could result in 'revocation of the agreement' ([Code Civ. Proc.,] § 1281.2), *we distinguished that case from those in which a party claimed illegality of the underlying agreement.* [Citation.] Moreover, we reasoned that requiring a party claiming fraud in the inducement to submit the claim to arbitration was justified because, 'The difference between a breach of contract and such fraudulent inducement turns upon determination of a party's state of mind at the time the contract was entered into, and we ought not close our eyes to the practical consequences of a rule which would allow a party to avoid an arbitration commitment by relying upon that distinction.' [Citation.]" (*Moncharsh, supra*, 3 Cal.4th at p. 30, fn. 13, italics added.)

■ In some cases, fraud in the inducement may result in "disappointed expectation[s]" that may justify a "revocation of the agreement" (Code Civ. Proc., § 1281.2), because of a failure of performance. (*Green v. Mt. Diablo Hospital Dist.* (1989) 207 Cal.App.3d 63, 70 [254 Cal.Rptr. 689] (*Green*) [the fraud in *Ericksen, supra*, 35 Cal.3d 312, concerned fraud in the performance of the contract resulting in disappointed expectations by one side, not fraud about the making of the contract itself, and arbitration was allowed].) According to the Supreme Court in *Moncharsh*, such a case should be distinguished from those in which a party claimed *illegality of the underlying agreement.* (*Ericksen, supra*, 35 Cal.3d at pp. 316–317, fn. 2.) Apparently, this means that *where the underlying agreement is illegal under other accepted standards*, its arbitration clause can be avoided. (See *Moncharsh, supra*, 3 Cal.4th at p. 30, fn. 13.)[5]

■ We now apply these rules to our case. Both in their fraud and statutory duty causes of action, respondents essentially plead that fraud in the inducement occurred, because they knew what they were signing, i.e., their agreements. However, they claim their consent was *induced* by fraud, so that even though there was mutual assent and a contract, the contract, by reason of the fraud, is *voidable.* (*Abramson v. Juniper Networks, Inc.* (2004) 115

---

[5] "The Civil Code places illegal contracts in three groups: (1) those contrary to *express statutes*; (2) those contrary to the *policy of express statutes*; (3) those otherwise *contrary to good morals.* [Citation.] [Citations.]" (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 451, p. 492.)

Cal.App.4th 638, 649, 667 [9 Cal.Rptr.3d 422].) This could mean that fraud claims such as these, based on fraudulent inducement of an underlying contractual arrangement, normally might be arbitrable, as in a case of disappointed expectations in the performance of the contract. However, respondents' references to breaches of statutory duty invoke other governing rules of contract interpretation that must be considered here in determining the arbitrability question. Specifically, "[c]ontracts that are contrary to express statutes or to the policy of express statutes . . . are illegal contracts. [Citation.] Any such illegality voids the entire contract. [Citation.]" (*Green, supra,* 207 Cal.App.3d 63, 73.) We must examine the rules regarding illegal contracts before deciding if this arbitration provision was severable. Here, respondents' argument is that certain statutorily required language in the contracts was omitted, and the statutory scheme expressly provides that contracts that omit this language are void and unenforceable. (§ 1694.4, subd. (a).) Before we reach that question, we return to the FAA claims newly raised on appeal.

### C.   Question of Any FAA Applicability

Valenti relies on several references in the record that suggest interstate commerce is involved here. The agreements show that all three respondents have non-California drivers' license numbers. Respondents allege that Valenti advertised widely, including in airline magazines. However, those facts are not dispositive, as will be explained, and were not timely presented and developed in the trial court to establish the dominant presence of interstate commerce in this case.

To support the claim this is merely a legal issue that can be resolved on this appellate record, Valenti relies extensively on *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440 [163 L.Ed.2d 1038, 126 S.Ct. 1204] (*Buckeye*). *Buckeye* involved a contract governed by the FAA. (*Buckeye,* at pp. 442–443.) There, the United States Supreme Court reversed a Florida Supreme Court decision that distinguished between void and voidable contracts, and held that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." (*Id.* at p. 449.) After *Buckeye,* federal case law should make no distinction between void and voidable contracts for arbitration enforcement purposes, where the FAA applies. (*Buckeye,* at p. 446; see also *Preston v. Ferrer* (2008) 552 U.S. ___ [169 L.Ed.2d 917, 128 S.Ct. 978].)

On appeal, we may address a newly raised issue if it involves "purely a matter of applying the law to undisputed facts." (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758].) Where different factual bases may exist to support a particular legal theory, it is the duty of

the party asserting those facts to bring them to the attention of the trial court. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28 [21 Cal.Rptr.2d 104].) Failure to do so may be deemed a waiver of the point on appeal. (*Ibid.*) It is not disputed that these agreements were entered into in California, that the arbitration clauses and related provisions provide for a forum in California, and enforceability of any arbitration award is to be determined under California law. The agreement as a whole is stated to be governed by California law, and in some cases, a choice of forum is stated as the Superior Court for the County of San Diego, California.

■ Where an arbitration provision contains California choice of law language, the parties' intent is inferred that state law will apply for resolving motions to compel arbitration. (*Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 784, fn. 5 [49 Cal.Rptr.3d 531], citing *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83, 91–93 [80 Cal.Rptr.2d 147].) Generally, *procedural* state rules are not preempted by the FAA if the parties have agreed "to arbitrate in accordance with California law." (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477 [103 L.Ed.2d 488, 109 S.Ct. 1248]; see *Gravillis, supra,* 143 Cal.App.4th 761, 784 [interpreting the stay provisions of Code Civ. Proc., § 1281.2, subd. (c): "Where the parties' agreement contains a choice-of-law clause stating that California law will apply, a trial court may exercise its discretion under [Code of Civil Procedure] section 1281. 2[, subdivision] (c) even if the underlying transaction involves interstate commerce. [Citations.]"].)

Given the lack of factual development of this record and the numerous references to California law in the agreements, we have no basis to rule this is properly an FAA case. Valenti's failure to raise the FAA argument below deprived the court of the opportunity to develop the record as to facts related to interstate commerce—a critical requirement in determining FAA applicability, on which we decline to speculate. Although the court in *Buckeye* generally states that its analysis for FAA cases must be applied in both state and federal courts, this should not now be treated as an FAA case. (*Buckeye, supra,* 546 U.S. at pp. 446–449.) Accordingly, we adhere to the analysis in *Rosenthal, supra,* 14 Cal.4th 394, for evaluating this record in terms of the wide-ranging California standards for enforceability of an arbitration clause, since the legality of the overall agreement is challenged.

### D. *California Statutory Scheme: Dating Service Contracts and "Revocability" of Agreements*

We next seek to outline the operation of the dating service statutes in the context of arbitration, which those statutes do not address. (§ 1694 et seq.) As

outlined above, a case solely based on allegations of fraud in the inducement ("disappointed expectations") may be ordered to arbitration, and the arbitrator may award relief such as "revocation of the agreement" (Code Civ. Proc., § 1281.2), because of a failure of performance. (*Green, supra*, 207 Cal.App.3d at p. 70; *Ericksen, supra*, 35 Cal.3d at p. 316.) That is not the only type of allegation here. The Supreme Court in *Moncharsh, supra*, 3 Cal.4th 1, 30, acknowledged that such a case may be distinguished from those in which a party claimed *illegality of the underlying agreement. (Ericksen, supra*, at pp. 316–317, fn. 2.) To understand whether these agreements are illegal, such that their arbitration clauses can nevertheless be avoided, we next turn to an analysis of the dating service statutory scheme. (See *Moncharsh, supra*, at p. 30, fn. 13.)

In the Civil Code, these statutes are found within division 3, "Obligations," part 2, "Contract," and title 5, "Extinction of Contracts." Within title 5, there are several chapters, of which the dating service statutes are chapter 2.1, and a related body of "weight loss contract" statutes are chapter 2.2 (§ 1694.5 et seq.). It is interesting to note that chapter 1 of title 5 refers to the "extinguishment" of contracts (§ 1682 et seq.) and chapter 2 refers to the "rescission" of contracts (§ 1688 et seq.; both originally enacted in 1872). From this placement of the dating service statutes within the long-standing rules for extinction or release from contractual obligations, we may infer that the Legislature was concerned with regulating the manner in which such dating service contracts were entered into, for the express purpose of providing the consumer with a means of release from them when exploitative contractual practices were followed. The Legislature used the terms "void and unenforceable" in the dating service statutes, which are a justification for securing "extinction" of a contract. (§ 1694.4, subds. (a), (b).) In the arbitration statutes, Code of Civil Procedure section 1281.2 uses a different term, "revocation," to indicate when a contractual arbitration clause should not be enforced (although "rescission" is more accurate). All these distinctions and terminology are important here, because we are tasked with determining whether this form of illegality provides a specific basis for revocation of the arbitration provision. If a contract never existed, due to fraud in the execution or inception, no arbitration can be ordered under it. However, if a contract once existed, but was fraudulently induced, arbitration in some cases can be ordered, such as where disappointed expectations are involved, in that performance did not match the promised result. (*Erickson, supra*, 35 Cal.3d at pp. 316–317, fn. 2.)

We next seek to determine whether a contract that clearly was created and existed for some time, but was entered into under fraudulent circumstances, can be deemed void on statutory grounds for purposes of the requested enforcement of any arbitration clause contained therein. We first focus upon the mandatory language of section 1694.3 that shall be included in every

dating service contract: "(a) If by reason of death or disability the buyer is unable to receive all services for which the buyer has contracted, the buyer and the buyer's estate may elect to be relieved of the obligation to make payments for services other than those received before death or the onset of disability . . . . [¶] . . . [¶] (b) If the buyer relocates his or her primary residence further than 50 miles from the dating service office and is unable to transfer the contract to a comparable facility, the buyer may elect to be relieved of the obligation to make payment for services other than those received prior to that relocation, and if the buyer has prepaid any amount for dating services, so much of the amount prepaid that is allocable to services that the buyer has not received shall be promptly refunded to the buyer. . . ."

Next, under section 1694.4, subdivision (a), "[a]ny contract for dating services which does not comply with this chapter is void and unenforceable." Further, under subdivision (b) of section 1694.4, "[a]ny contract for dating services entered into under willful and fraudulent or misleading information or advertisements of the seller is void and unenforceable." The section then provides for a private right of action for actual damages and treble damages by any buyer injured by a violation of this chapter. Statutory reasonable attorney fees are allowed to a prevailing party. (§ 1694.4, subd. (c).)

Where an alleged illegality goes to only a portion of the contract, not including an arbitration agreement, a court will be justified in ruling that the entire controversy, including the issue of illegality, remains arbitrable. (*Moncharsh, supra*, 3 Cal.4th 1, 30, citing *Green, supra*, 207 Cal.App.3d 63, 71.) In the case before us, not only does the basic agreement fail to contain the mandatory provisions of section 1694.3, it instead contains language about nonrefundability of payments made that is directly contrary to the required language. "Contracts contrary to express statutes or to the *policy* of express statutes are illegal. Such illegality voids the entire contract, including the arbitration clause. [Citation.]" (Alternative Dispute Resolution, *supra*, ¶ 5:137, p. 5-96.) This particular omission cannot be deemed to be only a peripheral or minor illegality of the contract, because it goes to a major policy promoted by the statutory scheme. How does this affect any right to arbitration under a different clause of the agreement?

### E. Illegality of the Contracts; No Severability of Arbitration Clause in this Context

This legislation provides that a dating service contract that fails to meet these standards is void and unenforceable, but without clarifying the rules that apply to an arbitration clause within that contract or agreement. We may find guidance in a comparable situation described in 14 California Jurisprudence 3d

(1999) Contracts, section 133, pages 421 to 422, discussing specialized types of contracts that must meet certain statutory standards in order to be valid (e.g., a broker's listing contract, or contracts entered into by a school board, city, or county). These rules apply to those situations: "A statute prohibiting the making of a particular kind of a contract except in a certain manner renders such contract void if made in any other way. Where the statute prescribes the only mode by which the power to contract is to be exercised, that mode is the measure of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract, and the doctrine that there is an implied liability arising from the receipt of benefits has no application. . . . Under such circumstances, the express contract attempted to be made is not invalid merely by reason of some irregularity or some invalidity in the exercise of a general power to contract, but is void because the statute prescribes the only method in which a valid contract can be made. The adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of the power to contract at all, and that power can be exercised in no other manner." (*Ibid.*, fns. omitted.)

■ That parallel authority suggests that if a statute prescribes the only method in which a valid contract can be made, a contract that fails to follow that method is void. Omitting required provisions, as here, does not follow the requirements of statute. Another guiding principle is found in *Loving & Evans v. Blick* (1949) 33 Cal.2d 603, 610–611 [204 P.2d 23], in which the court declined to enforce an arbitration award based on a contract that was illegal due to the lack of a required license: "It seems clear that the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. [Citations.] In the absence of a valid contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights." (*Id.* at p. 610.)[6]

We emphasize that this matter is before us solely upon a petition to compel arbitration. The trial court's order includes the statement, "[a]lso, it is alleged that the contracts were entered into under misleading circumstances." At this point in the litigation, where only arbitration issues are presented, only preliminary factual determinations can be made about whether these

---

[6] According to *Green, supra*, 207 Cal.App.3d 63, the proper reading of the rule established by *Loving & Evans v. Blick, supra*, 33 Cal.2d 603, is that it is not necessary to produce uncontroverted evidence of illegality of the underlying agreement. (*Green, supra*, at pp. 73–74.) However, under *Loving & Evans*, "the legality of the underlying agreement should first be judicially determined." (*Green, supra*, at p. 74; see also 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 451, p. 492.)

allegations of misleading circumstances are justified. The ruling on arbitrability does not further determine the merits of all issues about the agreements' legality under the dating service statutes. (*Rosenthal, supra,* 14 Cal.4th at p. 412.)

■ Nevertheless, when we read the agreements together with the statutes, and consider these parallel authorities, we conclude that because of the particular manner in which fraud in the inducement is alleged *within the context of these statutorily insufficient and illegal agreements,* the agreements do not belong within the general category allowing severable arbitration clauses, because of the importance of the omitted provisions. We are aware that even voidable contracts may contain enforceable arbitration clauses. "Under California law, illegal provisions may be severable if not central to the purpose of the agreement. [Citations.]" (Alternative Dispute Resolution, *supra,* ¶ 5:144.5, p. 5-99.) There, the authors cite as authority for this proposition *Abramson v. Juniper Networks, Inc., supra,* 115 Cal.App.4th 638, 658, 667. The "taint of illegality and unconscionability cannot be removed from this arbitration agreement by severing or restricting the objectionable terms. . . ." (*Id.* at p. 667.)

We cannot find the arbitration provisions in this case to be severable from these contracts under these authorities. The dating service statutes represent the Legislature's intent to regulate in a particular manner such contracts for dating services, and the statutes operate to exclude such contracts for dating services from the scope of the general rule that a court will refrain from determining the legality of voidable contracts that contain an arbitration clause, and will instead allow an arbitrator to do so. The defects in these agreements are central to the policy of the statutes, and the express language of the statutes regarding unenforceability applies to the arbitration clauses as well.

■ Thus, these agreements fail to meet the requirements of the dating service statutes and were appropriately deemed by the superior court, in its preliminary determination made for purposes of resolving the motion to compel arbitration, to be void and unenforceable. The court also properly made a preliminary factual determination that misleading circumstances existed and led to the entry into the agreements, supporting a conclusion the agreements are void. These conclusions apply to void the arbitration clauses contained within the agreements. We accordingly need not reach the arguments concerning unconscionability of the arbitration clauses. We affirm the trial court's order denying Valenti's motion to compel arbitration.

## DISPOSITION

Affirmed. Costs are awarded to respondents.

McIntyre, J., and O'Rourke, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 9, 2008, S162996.